No. 21,589.

THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF COWLEY et al., *Appellees*.

No. 21,590.

THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF COWLEY et al., *Appellees*.

No. 21,657.

B. F. BUSH, as Receiver of THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellee and Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF COWLEY et al., *Appellants and Appellees*.

### SYLLABUS BY THE COURT.

1. TAXATION—*Levy of Taxes to Complete County Buildings—Construction of Statutes*. Chapter 99 of the Laws of 1909, a general law concerning the erection of county buildings, authorized the board of county commissioners of Cowley county to appropriate $32,000 for the completion of a court-house and a jail that the commissioners of that county had commenced to build under chapter 164 of the Laws of 1905, a special act authorizing the commissioners of that county to erect those buildings and to levy a tax therefor.

2. SAME—*Location of County Jail*. Payment of taxes levied under a law authorizing the county commissioners to build a court-house and jail on a certain public square cannot be successfully resisted (or if paid under protest, cannot be recovered) on the ground that the jail was not built on that square, but was built on real property owned by the county across an adjoining street.

3. SAME — *Levy to Complete County Buildings — Limit of Authority*. Chapter 164 of the Laws of 1905 and chapter 99 of the Laws of 1909 authorized the board of county commissioners of Cowley county to expend $112,000 in building a court-house and jail, and authorized the commissioners of that county to levy taxes to collect that amount, but those laws did not authorize the commissioners to expend any additional amount, or to levy any additional tax to collect any money for any purpose whatever.

4. SAME—*Levy for Building Bridge—Tax Valid*. Chapter 68 of the Laws of 1911, a general statute amending section 655 of the General Statutes of 1909, which in turn was an amendment of section 575 of the General Statutes of 1901, did not repeal chapter 371 of the Laws of 1901, a special act authorizing the board of county commissioners of Cowley county to levy a bridge tax of two mills on the dollar.

Appeals from Cowley district court; SCHUYLER C. BLOSS, judge *pro tem.* Opinion filed November 9, 1918. Reversed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* all of Topeka, *W. P. Waggener,* and *J. M. Challis,* both of Atchison, for the appellants.

*J. A. McDermott,* and *H. W. Herrick,* both of Winfield, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: These actions involve the validity of certain taxes levied in 1913 and 1914 for the purpose of building a court-house and jail in Cowley county. The actions also involve the validity of certain bridge taxes levied in that county in 1914. In all the actions, judgment was rendered for the defendants, so far as the court-house and jail taxes were concerned; and in case No. 21,657, *Bush, Receiver, etc., v. The Board of County Commissioners et al.,* judgment was rendered for the plaintiff, so far as the bridge taxes were concerned. Each of the plaintiffs appealed from the judgment against it, and the defendants appealed from the judgment against them in case No. 21,657.

1. The validity of the court-house and jail taxes levied in 1913 and 1914 depends on the construction of chapter 164 of the Laws of 1905 and of chapter 99 of the Laws of 1909. The parts of the law of 1905 material in the consideration of the questions presented are sections 1, 2, and 3, which read as follows:

"SECTION 1. That the board of county commissioners of Cowley county, Kansas, is hereby authorized and directed to erect upon the public square in the city of Winfield, Cowley county, Kansas, a sheriff's residence and county jail combined, and a court-house, with ample and sufficient county offices therein, and to equip and furnish said buildings for permanent use as jail, court-house and county offices; and to sell, dispose of and remove from the public square the old court-house and jail now thereon situate and all other buildings now situate on said public square therefrom; and the funds derived from such sale shall be turned into "the county building fund," hereinafter mentioned and described.

"SEC. 2. The aggregate cost for the erection of said sheriff's residence and jail shall not exceed the sum of twenty thousand dollars, and the aggregate cost for the erection of said court-house and county offices shall not exceed the sum of sixty thousand dollars.

Railway Co. v. Cowley County.

"SEC. 3. The said board of county commissioners is hereby authorized and directed to levy an annual tax upon all of the taxable property subject to taxation in said county of Cowley to pay for the erection, equipment and furnishing of said sheriff's residence, jail, court-house, and county offices; said tax not to exceed the sum of twenty-five cents on the hundred dollars of taxable property as returned by the assessor in any one calendar year. Such tax shall be levied each year until a sum shall have been levied and collected sufficient to aggregate the amount necessary for the building and equipment of the jail and court-house aforesaid; provided, that in no case shall the total taxes levied for this purpose exceed the sum of eighty thousand dollars. The taxes levied and collected under this act shall be kept in a separate fund, to be known and designated as "the county building fund," and the money raised thereby shall be used exclusively to pay for the erection of said county jail and court-house."

The material part of chapter 99 of the Laws of 1909 is the proviso at the end of section 1, which proviso reads as follows:

"Provided, that in any county in this state where there has heretofore been an appropriation made for the purpose of erecting a court-house or other county buildings and the work of erecting said court-house of [or] other county buildings has been commenced, and in the opinion of the county commissioners of such county the amount appropriated is not sufficient to erect and complete the court-house or other county buildings suitable for the needs of such county, then the county commissioners, at any regular or special session called for that purpose, may appropriate, without formality of petition or vote, an additional sum not to exceed forty per cent. of the original appropriation, for the purpose of erecting and completing said court-house or other county buildings, and levy a tax upon all the taxable property in said county to raise said additional amount; provided, that not to exceed one-third of said additional amount shall be raised in any one year."

Under these laws, the defendants levied and collected taxes and paid out the funds this received in building the court-house and jail, in all amounting to $136,950.24. The judge who tried the cause, in an opinion filed by him, states that $121,239.62 of this amount was principal and that the remainder was interest.

The plaintiffs contend that the defendants had no authority to levy or collect any taxes except the $80,000 authorized by the law of 1905. The defendants argue that they were authorized to levy and collect not only that amount, but also to levy and collect the amount named in the proviso at the close of section 1 of the act of 1909. The plaintiffs insist that the act of 1905 was special, and that the act of 1909 was general. They invoke that principle of statutory construction that a general

act will not repeal, by implication, a prior special one applicable to the same matter. They argue that the act of 1909 did not enlarge, amend, or repeal the act of 1905; that Cowley county was not authorized to operate under the law of 1909; and that all taxes in excess of $80,000 levied in Cowley county for building the court-house and jail were illegal and void.

The effect of a general statute upon a special or local one has been before this court a number of times. Sometimes the general statute has been held to repeal the special or local act, and at other times, under different circumstances, it has been held otherwise. In *Howard v. Hulbert*, 63 Kan. 793, 66 Pac. 1041, this language was used:

"While the rule is that a general act will not repeal by implication a prior special one applicable to the same matter, yet this is not an invariable rule; and where, from the general act, it is clearly apparent that the legislature intended it to apply to the matter theretofore included in the terms of the special act, it will repeal such special act by implication." (syl. ¶ 1.)

In that case the court held that the special act was repealed by the general statute. Following that principle, a similar conclusion was reached in *Topeka v. McCabe*, 79 Kan. 329, 331, 99 Pac. 602. A different conclusion concerning other statutes was reached in *The State v. Thomas*, 74 Kan. 360, 369, 86 Pac. 499; *Wilson v. Edwards County*, 85 Kan. 422, 116 Pac. 614; *Bank v. Reilly*, 97 Kan. 817, 822, 156 Pac. 747; and *Greeley County v. Davis*, 99 Kan. 1, 160 Pac. 581.

In all these cases, the court ascertained the intent of the legislature as expressed in the subsequent general act, interpreted the statute according to that intent, and followed the principle that "the cardinal canon of construction, to which all mere rules of interpretation are subordinate, is that the intent, when ascertained, governs" (*The State v. Bancroft*, 22 Kan. 170, syl. ¶ 3) ; a rule that has been adhered to a number of times by this court. (*Prohibitory-Amendment Cases*, 24 Kan. 700, 719; *Intoxicating-Liquor Cases*, 25 Kan. 751, 763; *Wenger v. Taylor*, 39 Kan. 754, 757, 18 Pac. 911; *Atchison County v. Challiss*, 65 Kan. 179, 181, 69 Pac. 173; *Railway Co. v. Lyon County*, 72 Kan. 13, 15, 82 Pac. 519; *The State v. Prather*, 97 Kan. 513, 516, 100 Pac. 57; *The State v. Pauley*, 83 Kan. 456, 461, 112 Pac. 141.)

Railway Co. v. Cowley County.

"In statutes . . . , the will of the legislature, expressed in the statute, is the law, and is to be ascertained by all legitimate methods of interpretation." (*Jones v. The State of Kansas ex rel., Atherby and Kingsbury,* 1 Kan. 273, syl. ¶ 4.)

"But when the terms of a law are clear and precise, the only duty of a court is to declare the applicability of the law to any given case. When the legislature has expressed its will in plain and unambiguous language, courts are bound to say they meant what they have clearly expressed." (*Dudley v. Reynolds,* 1 Kan. 285, 289.)

"Courts . . . must seek simply to ascertain the legislative intent, and then enforce it." (*County-seat of Linn Co.,* 15 Kan. 500, 527.)

"It is always the rule that the meaning of a statute is to be derived from its general terms and manifest purpose." (*Gleason v. Sedgwick County,* 92 Kan. 632, 635, 141 Pac. 584.) -

"Where the meaning of a statute is clear there is no room for interpretation. The meaning must be ascertained from the words used. The context, the whole act, statutes *in pari materia,* and all extraneous circumstances which may be supposed to have affected the mind of the legislature may be taken into consideration in case of ambiguity, but the intention thus ascertained must be consistent with and fairly expressed by the words employed. To depart from the meaning expressed by the words is to alter the statute, to legislate, and not to interpret." (*Young v. Regents of State University,* 87 Kan. 239, 252, 124 Pac. 150.)

The rules of statutory construction are not rules restricting the power of the legislature in passing laws; they are rules observed by the courts in trying to ascertain what the legislature intended by the laws that have been passed. According to the authorities cited, when that intent is ascertained, the law, whether contained in a general or a special act, must be interpreted according to that intent.

So far as Cowley county is concerned, what was the intention of the legislature as expressed in the act of 1909? By that act chapter 141 of the Laws of 1907 was amended so as to make it fit the situation that existed in Cowley county, and the proviso that has been quoted was added at the end of the chapter. When the law of 1909 was passed, the act of 1905 had probably accomplished all that it could accomplish. All the authority that it conferred had probably been exercised by the county commissioners. Nothing that the legislature did, or could do, could in any way affect what had been done under the act of 1905. Apparently the terms of the act of 1909 applied to Cowley county. Probably there was no other county in the state to which the proviso in the act did apply. Apparently the legis-

lature intended, by the amendments, to make the general law apply to Cowley county. The act of 1909 applied to all counties that came within its terms. The language used, "any county," is broadly inclusive, and expressed the legislative intention that the law should apply to every county in which the conditions stated existed.

The question for determination is not so much, Did the act of 1909 enlarge, amend, or repeal the act of 1905? but rather, Did the act of 1909 authorize the county commissioners of Cowley county to appropriate an additional sum of money to complete the court-house and jail? That the legislature could authorize such additional appropriation cannot be successfully disputed. Probably a situation then existed in that county calling for legislative assistance. That assistance was given by the act of 1909. It must therefore be held that Cowley county could use the power given by that act to complete the court-house and jail.

2. The law of 1905 authorized the defendants to build a court-house and jail on the public square in the city of Winfield. The court-house was built on the public square, but the jail was built on a piece of ground owned by the county across a street adjoining the public square. It is argued by the plaintiffs that the defendants had no authority to build the jail on any piece of ground except the public square, and that, therefore, the taxes levied to build it were illegal and void. This interpretation of the statute is too narrow. The plaintiffs should not be allowed to escape their share of the taxes levied to erect those buildings because of the failure to put both of them on the public square.

3. Did the defendants have power to levy and collect taxes to produce $112,000 to be used in erecting the court-house and jail, and then in addition thereto, levy and collect taxes to raise $15,000 or $25,000, or any other additional amount, and with it pay interest on any part of the debt that had been contracted in erecting the buildings?

The defendants argue "that the commissioners were authorized to expend on construction and equipment the sum of $112,000, exclusive of any interest paid on warrants." *Kelly v. Cole,* 63 Kan. 385, 65 Pac. 672, is cited in support of that argument. That case concerned refunding bonded indebtedness. The court there held that matured interest coupons were a part of the

bonded indebtedness and could be refunded, but held that un-
earned interest coupons were not a part of the bonded indebt-
edness and could not be refunded. That decision was rendered
under a statute which authorized refunding bonded indebted-
ness, including coupons and judgments thereon. That statute
limited the power granted when a county refunded its bonds.
The statutes now under consideration limit the power of the
county to appropriate money and to levy taxes. *Kelly v. Cole*
is not applicable to the statutes now under consideration.

By the act of 1905 the cost of the sheriff's residence and jail
should not exceed $20,000, and that of the courthouse should
not exceed $60,000. By that act it was provided that in no case
should the taxes levied for those purposes exceed the sum of
$80,000. These restrictions constituted limitations on the
amount that could be paid for the buildings and on the amount
of taxes that could be levied therefor. By the act of 1909 the
county commissioners were authorized to levy a tax sufficient
to raise forty per cent of $80,000. Under that act they could
levy a tax to raise $32,000. The act of 1905 provided for issuing
warrants and provided that they should bear interest at the rate
of five per cent per annum, but the act did not authorize the
levy of a tax to provide a fund, in addition to $80,000, for the
purpose of paying interest. Under the act of 1905, $80,000 was
the limit for interest and all other expenditures of every nature
or kind. The act of 1909 provided that an amount equal to
forty per cent of the original appropriation might be appro-
priated to complete a court-house, or other buildings, which had
been commenced, and provided that a tax might be levied to
raise that forty per cent; not forty per cent and interest
theron, but forty per cent of the original amount appropriated.
Neither the act of 1905 nor the act of 1909 contemplated that
interest might be added to the amounts therein named.

The total amount authorized by the acts of 1905 and 1909
was $112,000. The court-house and jail cost $136,950.24, al-
most $25,000 more than the law authorized. All taxes levied in
excess of $112,000 were illegal and void. Under the circum-
stances, it is necessary that the trial court determine how much
of the taxes levied for the years 1913 and 1914 was in excess of
$112,000. Judgment should then be rendered in favor of the
plaintiffs for the illegal proportion of these taxes.

4. In case No. 21,657, the defendants appeal from the judgment in favor of B. F. Bush, receiver, for certain bridge taxes levied in 1914 and paid by him under protest. Those taxes were levied under chapter 371 of the Laws of 1901, sections 1 and 2 of which read as follows:

"SECTION 1. The board of county commissioners of Cowley county is hereby authorized, in its discretion, to levy a bridge tax of not exceeding two mills on the dollar each year, to be collected as other taxes.

"SEC. 2. The fund created thereby shall be known as the "bridge fund," and shall be used by the board for general bridge purposes."

The receiver argues that this law was repealed by chapter 68 of the Laws of 1911, and that, therefore, no legal taxes could be levied under the act of 1901. The defendants contend that the law of 1901 has not been repealed by any act of the legislature. This presents a problem of statutory construction, similar to the one just disposed of. The authorities there cited are controlling here.

Has chapter 371 of the Laws of 1901 been repealed? When that law was enacted, section 575 of the General Statutes of 1901 provided, in substance, that when the board of county commissioners of any county having a population of more than 20,000 (Cowley county then had a population of more than 20,000) should determine that a bridge or bridges were necessary to be built or repaired, the cost of which would exceed $2,000, they should, before making the appropriation therefor, secure the consent of the qualified voters of the county. The section prescribed details for carrying its provisions into execution. That section was enacted in 1867 and was first amended in 1879. The special act for Cowley county was enacted when section 575 was in existence, and the two stood side by side as valid laws. In 1909 (Laws 1909, ch. 99), section 575 was amended in several particulars, the principal one of which raised the minimum amount to which the statute should apply. The restriction as to population was also taken off. That law was again amended in 1911, by chapter 68 of the Laws of that year. By the last act, the minimum appropriation was made $5,000, and an elaborate classification was made as to larger appropriations for larger counties. With the amendments, section 575 of the Laws of 1901 has been continuous in its operation from 1879 to the present time. The amendments changed

the amounts that might be appropriated, changed the classification of the counties that might operate under ,it, and changed the procedure by which the money could be legally devoted to building bridges; but one general idea has continued through all the years, and that has been that for making large appropriations for building bridges it has been necessary for the county commissioners to secure the consent. of the electors of their respective counties. In the main, the law for building bridges has remained substantially as it was in 1901 when the special act for Cowley county was enacted. There is nothing in any of the amendments to section 575 which indicates any intention to repeal the special law of 1901. The amendments to section 575 are no more antagonistic to the special act than was that section before it was amended. Each amendment to section 575 is just as consistent with the special act as was the original section itself. Section 575 of the General Statutes of 1901 now appears as section 719 of the General Statutes of 1915. So far as the latter section is the same as the former, the latter should be construed as a continuation of the former, and not as a new enactment. (Gen. Stat. 1915, § 10973, subdiv. 1.)

Following the declared rules for the construction of special and general statutes, the court must conclude that chapter 371 of the Laws of 1901 has not been repealed, and that taxes levied thereunder are neither illegal nor void.

The judgment in favor of the receiver is reversed, and the district court is directed to enter judgment in favor of the defendants on the cause of action involved in this appeal.