STATE OF MISSOURI, at the Relation of RANDOLPH COUNTY, MISSOURI, Relator, v. J. A. WALDEN, Special Judge of the Circuit Court of Randolph County, Missouri.—No. 40405.—206 S. W. (2d) 979.

Court en Banc, December 8, 1947.

168

*Marion E. Lamb* and *Samuel E. Semple* for relator.

*Thos. J. Tydings* for respondent.

170

[981] CONKLING, J.—This is an original proceeding in prohibition instituted here by Randolph County, which has less than 30,000 inhabitants, challenging the jurisdiction of the respondent Special Circuit Judge to determine the fundamental question whether the number of magistrate courts in that county can be increased by two under Section 18, Article V, Constitution Mo. 1945 and Section 1, Laws Mo. 1945, p. 767, et seq. In a respect hereinafter noted this constitutional provision and statute are seemingly in conflict.

The issue was raised by the parties in the following manner: Two justices of the peace of the county (who would be eligible for appointment as magistrates), brought a suit in the circuit court thereof to have the foregoing question adjudicated, and for an ascertainment of whether the additional magistrate courts were needed, which latter they alleged to be the fact. The relator county was permitted to intervene, and filed three motions to dismiss, severally on the grounds that: the plaintiff justices' petition failed to state a claim upon which relief could be granted; (2) the circuit court had no jurisdiction over the subject matter; (3) the petitioners had no legal capacity to sue.

The circuit court overruled these motions and was about to proceed with a hearing on the plaintiffs' petition when the county, as relator, filed its petition here praying the issuance of our provisional rule in prohibition directed to the respondent special [982] judge of said circuit court. The latter waived issuance of the provisional writ, filed his return raising the same questions as below, and by agreement the cause is submitted on the pleadings.

Section 18 of Article V of our Constitution provides: ''There shall be a magistrate court in *each* county. *In counties of 30,000 inhabitants or less,* the probate judge shall be judge of the magistrate court. In counties of more than 30,000 and not more than 70,000 inhabitants, there shall be one magistrate. In counties of more than 70,000 and less than 100,000 inhabitants there shall be two magistrates. In counties of 100,000 inhabitants or more there shall be two magis-

trates, and one additional magistrate for each additional 100,000 inhabitants, or major fraction thereof.

"According to the needs of justice the foregoing number of magistrates in any county may be increased by not more than two, or such increased number may be decreased, by order of the circuit court on petition, and after hearing on not less than thirty days public notice. The salaries of magistrates shall be paid from the source or sources prescribed by law." (Paragraphing and emphasis ours.)

In attempting to implement the foregoing Section 18, Article V, Constitution 1945, under a direction in Section 21, Article V thereof, that the General Assembly shall "provide for the *administration* of magistrate' courts . . . ," the statute here involved, Section 1, Laws Mo. 1945, p. 768, copied verbatim the first paragraph of the constitutional provision as we have quoted it. But it changed the second paragraph and made that part of the statute read as follows: "According to the needs of justice, *in counties of more than 30,000 inhabitants*, the foregoing number of magistrates in any county may be increased by not more than two, or such increased number may be decreased, by order of the circuit court . . . . " (Continuing, the statute prescribes a court procedure for making these changes, which we shall consider later.) It will be observed that the statutory Section 1 substitutes the above italicized words "in counties of more than 30,000 inhabitants" in place of the words "any county" which are used in the Constitution.

The relator county in its brief filed here contends (1) that the plain, natural and ordinary meaning of the constitutional provision limits the right to create additional magistrate courts to counties of more than 30,000 inhabitants, (2) that the legislative construction (Laws Mo. 1945, page 767) of the constitutional provision limits such right to counties of more than 30,000, (3) that even assuming the contrary of the first contention above, the constitutional provision is not self-executing and requires enabling legislation, and (4) that if the statute could be held to be an enabling act for counties of less than 30,000, the petition filed in the court below is insufficient in law because it does not comply with the statute, it having only two signatures instead of 500, as required by the statute.

On the other hand, the respondent Judge in his brief contends: (1) that the Constitution gives the circuit court in *"any county"* of the state jurisdiction to determine whether "the needs of justice" require an increased number of magistrates, within the constitutional limitation, (2) that such jurisdiction, being conferred on the circuit court by the Constitution, cannot be taken away or limited by statute. Part of the assignments involve substantive law and part procedural law. We consider the former first.

Briefly stated, therefore, the first question presented by this appeal is whether respondent, as Special Judge of the Circuit Court

of Randolph County, has jurisdiction to hear the petition and to determine whether the needs of justice require any additional magistrate in Randolph County. We rule that this question must be affirmatively answered.

In considering the instant question we must do so within the proper limits of constitutional construction having in mind that it is our function to construe the section in question, and, that in construing it, we cannot re-write it. In State ex rel. Heimberger v. Board of Curators, 268 Mo. 598, 188 S. W. 128, 130, as to constitutional construction, we said: " ' . . . That which the words declare is the meaning of the instrument, and neither courts nor Legislatures have a right to add to or take [983] away from that meaning.' Cooley's Const. Limitations (7th Ed.), p. 91. 'In interpreting clauses we must presume that words have been employed in their natural and ordinary meaning. As Marshall, C. J., says: The framers of the Constitution and the people who adopted it ''must be understood to have employed words in their natural sense, and to have intended what they have said.'' This is but saying that no forced or unnatural construction is to be put upon their language; and it seems so obvious a truism that one expects to see it universally accepted without question; but the attempt is made so often by interested subtlety and ingenious refinement to induce courts to force from these instruments a meaning which their framers never held that it frequently becomes necessary to re-declare this fundamental maxim.' " Of primary importance in construction is the true intent and purpose of those who drafted the instrument. Graves v. Purcell, 337 Mo. 574, 85 S. W. (2d) 543. It is fundamental that the entire instrument (at least all pertinent provisions) be considered and that detached fragments or isolated provisions be not alone viewed. Such construction as effectuates, rather than that which destroys a plain intent or purpose, is not only favored but will be adopted. State v. Adkins, 284 Mo. 680, 225 S. W. 981.

Relator's position upon the question now before us seems to be based upon its argument that since Section 18 provides that in counties of 30,000 or less the probate judge shall be the judge of the magistrate court, that thereby that section creates a distinct classification which clearly sets such counties apart from counties of a greater population wherein provision is made for magistrates who are not also probate judges. Relator further argues the constitutional provision that ''according to the needs of justice the foregoing number of magistrates in *any* county may be increased'' likewise creates a classification of counties of more than 30,000, and that only within the latter claimed classification may *"any county"* have two additional magistrates if ''the needs of justice'' require. But we are not impressed with that view. To adopt it we would be required judicially to write into Section 18 after the words ''any county'' in the fifth

sentence thereof, the words "of a population of more than 30,000". That we cannot do.

Section 18 plainly provides there shall be a magistrate court in "each county." Each and every county in the state is included therein. None is omitted. It is all-inclusive as to counties. As to a county which has 30,000 population or less it is provided that the probate judge shall be magistrate as of course. That is true unless any such county should come within the later noted provision of Section 18 where the needs of justice otherwise are judicially found to exist. Section 18 recognizes that there are counties of less than 30,000 population. Such counties of necessity are included within the words "any county." The words "any county" used in the fifth sentence is the equivalent of saying "every county" or "any county in the state."

This view is not without authority. We have held the word "any" to be all-comprehensive and the equivalent of "every." Wormington v. City of Monett, 356 Mo. 875, 204 S. W. (2d) 264. In Garrison v. Perkins, 137 Ga. 744, 74 S. E. 541, it was held that a statute providing that "any county" may rent a farm on which to work convicts under certain circumstances included every county in the state. In O'Brien v. Vulcan Iron Works et al., 7 Mo. App. 257, it was held that the words "any county" included every county in the state and also the City of St. Louis. See also, Atchison, Topeka & Santa Fe Railway Co. v. Board of Commissioners, 103 Kan. 681, 176 Pac. 99, 102. The words under consideration are unequivocal, unambiguous and free from doubt. The plain words used declare themselves the meaning of the section. The intent is manifest. It is clear from the context and from the preceding references in Section 18 both to counties of less than 30,000, and of more than 30,000, that the use of the words "any county" refers to and includes every county in the state. The words "any county" are all-comprehensive.

If there were any ambiguity or doubt in Section 18 as to the sense of those words as they were intended to be used and understood by those who wrote the instrument [984] itself, it could be set at rest by the examination of the debates in the Constitutional Convention. Conceding the limited reliance which may be placed upon the convention debates (State ex rel. Donnell v. Osburn, 347 Mo. 469, 147 S. W. (2d) 1065, 1068), the record thereof would carry some persuasiveness. An examination of the convention record at pages 2819, 2822 and 2842 demonstrates that the proponents in their explanation of Section 18 to the convention, clearly stated the meaning of the words as we above rule.

Further, it may be noted that Sections 18, 19, 20 and 21 of Article V of the Constitution indicate a clear purpose to establish and maintain a constitutional system of inferior courts in the state

somewhat like the Justice of the Peace courts which were authorized. by Section 37 of Article VI of the 1875 Constitution. This is further disclosed by Section 20 of Article V of the present Constitution wherein it is provided, that "until otherwise provided by law consistent with this Constitution, the practice, procedure, administration and jurisdiction of magistrate courts, and appeals therefrom, shall be as now provided by law for justices of the peace."

Section 37 of Article VI of the 1875 Constitution authorized "as many justices of the peace as the public good may require", and thus the number thereof was made a question for legislative determination. The present Constitution in Section 18 limits the number of magistrates but provides for a possible increase of two magistrates "according to the needs of justice" in "any county" and "by order of the circuit court." Thus the possible increase of two in "any county" is made a judicial question. There can be no question but that there is an intent in the present Constitution to authorize and confer jurisdiction, upon a system of convenient courts of limited number and of limited jurisdiction, and easily accessible to litigants. There appears no intention, however, by any constitutional provision, to limit to one and one only, and for the duration of the 1945 Constitution, the number of such magistrates in counties of 30,000 or less, if the local circuit court after hearing evidence upon a local situation, should in the exercise of a sound judicial discretion determine and find that "the needs of justice" require one or two additional magistrates. The contrary affirmatively appears.

The grant of jurisdiction contained in Section 18 to circuit courts in counties of 30,000, or less, to rule the question of "the needs of justice" is complete and sufficient of itself. That jurisdiction being conferred by the Constitution upon a constitutional court (the circuit court of any county in the state) no act of the General Assembly could in any wise add to it, detract from it, transfer it, infringe upon it or vary it. State ex rel. Wabash Railway Co. v. Shain, 341 Mo. 19, 24, 106 S. W. (2d) 898, Ward v. Public Service Commission, 341 Mo. 227, 232, 108 S. W. (2d) 136, State ex rel. Cave v. Tincher, 258 Mo. 1, 166 S. W. 1028, 21 C. J. S., pages 181, 182.

Following the plainly worded provisions of the section, therefore, we rule that Section 18 of Article V of our Constitution vests jurisdiction in the circuit court of *any county in the state,* in the exercise of its judicial discretion, to determine whether the needs of justice in such county require additional magistrates within the constitutional limitation as to the number thereof.

As to relator's contention of the value here of legislative construction as evidenced by Laws Mo. 1945, page 767. While it is true that weight should be given to official legislative and executive acts, and while it has been written that such official acts are "very per-

suasive on the courts'', yet such weight is accorded and such practical construction held persuasive only when the section in question is ambiguous and its meaning doubtful. Folk v. City of St. Louis, 250 Mo. 116, 157 S. W. 71, State ex rel. Cobb v. Thompson (Banc), 319 Mo. 492, 5 S. W. (2d) 57, 59. But we have ruled above that the meaning of Section 18, on the question now before us is free from doubt and ambiguity. The contention is ruled against relator.

Relator argues at length that even if Section 18, Article V of the new Constitution actually does authorize the circuit courts in counties of 30,000 inhabitants or [985] less to increase the number of magistrates according to the ''needs of justice'' (as we have held above), nevertheless the section is not self-executing and enabling legislation is required. This has not been supplied, says relator, because Section 1, Laws Mo. 1945, p. 767 restricts both the power of making such increases and the court procedure involved to counties of *more* than 30,000 inhabitants, and is wholly silent in that regard as to counties of less than that population.

Our answer to these contentions is two-fold. First, we hold Section 18, Article V of the Constitution is self-enforcing. Without legislative enactment it supplies a rule for the enjoyment of the right granted. State ex rel. City of Fulton v. Smith, 355 Mo. 27, 194 S. W. (2d) 302. It created a new right which had not theretofore existed. McGrew Coal Co. v. Mellon, 315 Mo. 798, 287 S. W. 450. Section 18 descends to details, providing: that there shall be a magistrate in *each* county; that in counties of 30,000 inhabitants or less, the probate judge shall be the magistrate; that in counties of larger population, by gradations, there shall be a greater number of magistrates; and that according to the needs of justice (without regard to population) any county has the right to have the number of magistrates increased by two, or such increased number decreased, ''by order of the circuit court on petition, and after hearing on not less than thirty days public notice.''

To us it seems obvious these provisions exclude the idea that the establishment of magistrate courts was intended to be dependent on action by the General Assembly. As already pointed out, Section 20, Article V of the new Constitution declared that ''*until* otherwise provided by law *consistent* with this Constitution,'' the procedural and administrative laws applicable to justices of the peace should govern them. And the next following Section 21 required the General Assembly to provide for the administration of magistrate courts. Certainly nothing in any of these constitutional provisions can be construed as suspending the operation of magistrate courts until the General Assembly had acted—and much less can they be thought to sanction the making of structural changes in these courts, as Section 1, Laws Mo. 1945, p. 767 has done, by nullifying the provision in Sec-

tion 18, Article V of the Constitution, that the number of magistrates may be increased by two in *any* county, and substituting a provision that it can be done only in counties of more than 30,000 inhabitants. In so stating, we do not mean to say that the General Assembly cannot enact procedural law supplementing the constitutional provision and in harmony therewith.

Relator further argues that Section 1, Laws Mo. 1945, p. 768 leaves the magistrate courts hamstrung because in the last sentence it only provides for the salaries of magistrates in counties of 30,000 inhabitants or more, and thereby leaves magistrates in counties of less population unprovided for. This does not by any means follow. The mere fact that the Legislature may fail to provide a salary for a court does not destroy the court as such.

Our second answer to relator's contentions above is that on a proper construction Section 1, Laws Mo. 1945, p. 767 may be considered as implementing the constitutional provision, Section 18, Article V, although it is in the respect above pointed out inconsistent with it, in limiting its application to counties of 30,000 inhabitants or more. That provision evidently was inserted because of an erroneous construction of the constitutional provision. In other words, it was the intention of the lawmakers to conform to the Constitution. The General Assembly must be deemed to have acted with integrity and with a desire to keep within the Constitution in their actions. It is under the same obligation as the courts to observe the Constitution. But, the General Assembly having failed to conform that portion of the statute, limiting its application to counties of more than 30,000, to Section 18 of Article V, that portion of the statute must of necessity fall. The invalidity "of a part of a statute does not render the remainder of the statute invalid where enough remains, after discarding the invalid part, to show the legislative intent and to furnish sufficient means to effectuate that intent." State ex rel. McDonald v. Lollis, 326 Mo. [986] 644, 33 S. W. (2d) 98. After eliminating that portion of the statute we above hold to be invalid, the statute, considered with the self-enforcing provisions of Section 18 of Article V remains complete in itself. The net effect of the attempt of the statute to give the right herein noted to any classification of counties whatever is as though no such attempt had been made at all. The workability of the statute remains unimpaired. It is just as workable as though the words "in counties of more than 30,000 inhabitants" had been wholly omitted from the fifth sentence of Section 1 of the Act.

However, it does not follow from our ruling that the constitutional provision is self-enforcing that the General Assembly did not have the power to enact legislation providing reasonable regulations for the exercise of the right by prescribing the practice to be

pursued in its enforcement. Such legislation may be enacted as will facilitate operation, prescribe a practice to be used for enforcement, provide a convenient remedy for the protection of the right secured or the determination thereof, or place reasonable safeguards around the exercise of the right. Cooley's Constitutional Limitations, (7th Ed.) p. 122, (8th Ed.) pages 170, 171, Barker v. St. Louis County, 340 Mo. 986, 104 S. W. (2d) 371, 376, Tremayne v. City of St. Louis, 320 Mo. 120, 132, 6 S. W. (2d) 935, State ex rel. Elsas v. Workmen's Compensation Commission, 318 Mo. 1004, 2 S. W. (2d) 796, Warner et al. v. Kenny, 165 Pac. (2d) (Cal.) 889, Chesney v. Byram, 101 Pac. (2d) (Cal.) 1106, Samples v. Grady, 182 S. W. (2d) (Ark.) 875, 16 C. J. S. Const. Law, p. 99, 11 Am. Juris. Const. Law, p. 694.

Yet such legislation "cannot limit or restrict the rights conferred by the constitutional provision." State ex rel. Elsas v. Workmen's Compensation Commission, supra. In State ex rel. City of Fulton v. Smith, State Auditor, supra, we said: "Minor details may be left for the legislature without impairing the self-executing nature of the constitutional provisions . . . but all such legislation must be subordinate to the constitutional provision, and in furtherance of its purposes, and must not in any particular attempt to narrow or embarrass it." In a contest between the two if the statute *restricts a right* conferred by the Constitution, the latter prevails and the statute falls. Within the above set out well-established rules it must be determined whether the provision of Section 1 of the statute, which requires that the "petition" mentioned in Section 18 of Article V be the "Petition of five hundred qualified voters of the county", was a provision which the General Assembly was empowered to enact.

That the statutory provision was in furtherance of the purpose under consideration seems plain. The Constitution grants a new right which it made a matter for judicial determination "by order of the circuit court on petition, and after hearing on not less than thirty days public notice." It merely created the right and laid down a single procedural requirement of notice. The General Assembly had every right under the law to prescribe further procedural requirements of the practice to be pursued in the enforcement of the right constitutionally created. Unlike certain other constitutional provisions hereinafter noted, and unlike the provision referred to in Samples v. Grady, 182 S. W. (2d) 875, Section 18 merely provides for a judicial determination of the question involved in the circuit court "on petition". It does not give the right to institute proceedings to "any citizen", "any taxpayer", the prosecuting attorney or the attorney general. Section 18 creates the right and provides for notice. The General Assembly was empowered to take up the subject at that point and provide the machinery, set up the procedure, channelize the processes, and in its wisdom safeguard

the exercise of the right by setting out certain requirements, the required compliance with which does not restrict the right itself, but which sets up a procedure within which that right must be exercised. It should be borne in mind in considering the extent of legislative discretion that the state Constitution is not a grant of legislative power but a limitation on the power of the General Assembly. By requiring the petition to be that "of five hundred qualified voters" the [987] General Assembly provided a convenient and reasonable procedure to determine and protect the right secured to any county by placing a safeguard around the exercise of the right.

As distinguished from the mere constitutional establishment of the right, created by Section 18 and under consideration in the instant case, it is noted that in Article VI, Sections 18 (a) to 18 (j), the Constitution confers the right of government by special charter upon certain counties. Similarly, in other sections, Article VI confers upon certain cities the right of government by special charter, and confers also the right of certain city and county consolidations. But said sections set out in detail the process, procedure and machinery by which such constitutionally conferred rights are to be effectuated. Among the other things affirmatively required in each instance is that, as therein provided, a petition shall be signed by a certain per cent of the qualified electors. In these sections of Article VI more is constitutionally required than a mere petition, and notice. The further details of the required procedure in each instance are set out in the Constitution, step by step, and no detail of the procedure to effectuate the right is omitted. Even the effect thereof as to judicial notice by all courts is contained within these sections of the Constitution itself.

We rule that the statutory provision as to five hundred qualified voters does nothing to impair, limit, restrict or embarrass the right itself. Procedurally only it but safeguards its exercise and shields the right from abuse. Many salutary reasons instantly present themselves which indicate the soundness and reasonableness of that procedural legislation.

We come now to the procedural question raised by relator. The petition filed in the circuit court was signed only by the two justices of the peace. Under these facts does the circuit court have power to proceed to hear the cause upon the petition now pending before it? We think it does not. We recognize and adhere to the rule that where the lower court has jurisdiction of the class of cases into which a case pending before it legally belongs, that it then has the further jurisdiction to determine whether there are the proper and sufficient allegations in the petition pending before it to state a cause of action, or to state a claim upon which relief can be granted. But this is not that situation. A Court must proceed in a pending

cause according to the course prescribed by law, in that the petition before it must be one in the first instance sufficient to initiate the exercise of its jurisdiction. Courts recognize the fundamental difference between a situation in which a Court, having jurisdiction of the subject matter, has also the further power to pass upon a mere insufficiency of allegations in a petition before it to state a cause of action, and the same Court, having jurisdiction of the subject matter, has before it a petition which is insufficient to initiate and call into being the exercise of the jurisdiction such Court possesses. State ex rel. National Refining Company v. Seehorn, 344 Mo. 547, 558, 127 S. W. (2d) 418.

That the circuit court of any county in the state has general jurisdiction of the subject matter, i. e., of an inquiry into "the needs of justice" in the respect now before us, is beyond question. Here the circuit court has by motion had this point specifically called to its attention in the case before it. Notwithstanding there were only two signers of that petition, the Court below threatens to proceed. But the statute, valid in that respect, as we above hold, plainly requires that the action be brought "on petition of five hundred qualified voters of the county." The two justices of the peace, alone, never did have authority to institute or prosecute the action which they filed in the circuit court. Bringing such an action by themselves and alone, and for themselves only, they do not and cannot state a cause of action. Such a petition as is now before the lower Court is not sufficient to initiate the jurisdiction which the circuit court possesses under Section 18. State ex rel. National Refining Co. v. Seehorn, supra.

We rule that under the instant circumstances the petition now before the lower Court, showing upon its face that it is signed by only two (instead of five hundred) [988] qualified voters of the county, is insufficient to call into being the jurisdiction to proceed, which jurisdiction the Court unquestionably would possess if it were proceeding according to the course prescribed by law in a case with a petition signed by at least five hundred qualified voters of the county.

The provisional rule in prohibition issued herein should be made absolute. It is so ordered. *Douglas, Ellison* and *Hyde, JJ.,* concur; *Clark, J.,* concurs in separate opinion; *Leedy, J.,* dissents in separate opinion; *Tipton, C. J.,* dissents and concurs in dissenting opinion of *Leedy, J.*

CLARK, J. (concurring).—I concur in the principal opinion. The question raised by the dissenting opinion of Leedy, J., is a close one.

The constitution, section 18, article V, authorizes the increase or decrease of the number of magistrates in any county by the circuit

court "on petition." The statute requires the petition to be signed by not less than five hundred qualified voters.

The dissenting opinion truly says that, in the absence of any statute, the jurisdiction of the court could be invoked by *one* petitioner; but that does not necessarily prohibit reasonable statutory requirements as to the qualifications or number of petitioners. The constitution does not require the petitioner to be a resident of the county. Surely, a statute could validly make such requirement. Also I think the statutory requirement that the petition be signed by a reasonable number of qualified voters is valid.

If this question related only to the enforcement of an individual right, the petitioner could not be required to procure others to join in his petition. But this is a matter of public concern and, in order to invoke the court's jurisdiction, some public demand should be indicated. Otherwise, any ambitious aspirant could petition to create the office and any disgruntled litigant could petition to abolish it.

The constitution merely requires a "petition" and, I think, leaves it to the General Assembly to prescribe the *kind* of petition in any reasonable manner not contrary to the purpose of the constitutional provision.

LEEDY, J. (dissenting).—I respectfully dissent from the conclusion reached by the principal opinion. I agree that Sec. 18, Art. V, "vests jurisdiction in the circuit court of *any county in the state,* in the exercise of its judicial discretion, to determine whether the needs of justice in such county require additional magistrates within the constitutional limitation as to the number thereof"; that it is self-enforcing, and "without legislative enactment it supplies a rule for the enjoyment of the right granted." The principal opinion construes Sec. 1, Laws 1945, p. 767, as "implementing" this self-executing provision, although expressly conceding that the act is inconsistent in some respects with the very provisions it purports to implement. I agree that inconsistencies do exist, one of them constituting, I submit, the basis for making absolute the preliminary rule in prohibition herein. Such is the ground of my dissent.

I think that, on the authority of the cases cited by the principal opinion, it is clear that Section 1 of the statute is an impairment of the self-executing nature of the constitutional provision because of its requirement of a petition signed by 500 voters as a condition to the exercise of the circuit court's jurisdiction to determine the judicial question of the needs of justice. As I understand the rule respecting the permissible scope of legislation of the character here involved, such legislation must facilitate the constitutional right, or, as some of the cases say, it "must be in harmony with the Constitution and further the exercise of constitutional right and make it more available." 11 Am. Jur. Constitutional Law, Sec. 76, p. 694. Here the

constitution authorizes the circuit court to exercise its jurisdiction "upon petition" (and after a hearing, etc.) without specifying any particular number of signers, so that it is perfectly [989] clear one signer would be sufficient, in the absence of the statute. I am unable to agree that the requirement of a petition signed by 500 voters may reasonably be construed as being in the nature of a safeguard of the constitutional right, or as making it more available. It is the determination of a judicial question which is committed to the circuit court, as the principal opinion properly holds. It is not a referendum to be conducted under the supervision of the circuit court. Regardless of how many voters favor or oppose increasing the number of magistrates, the ultimate question is the one of the needs of justice with respect to magistrate court facilities in the particular county, and, accordingly, is not affected by the number of signers to a petition praying the adjudication of that question. *Tipton, C. J.,* concurs.