STATE OF MISSOURI, ex rel. DAVID L. MILLAR, ROBERT E. BLAKE, ALFRED H. KERTH, FORREST M. HEMKER and A. E. L. GARDNER, Relators, v. WALTER H. TOBERMAN, Secretary of State of Missouri; and JOHN E. MOONEY, GEORGE E. HEEGE, LYNN MEYER, and EDWARD E. HEIL, Constituting the Board of Election Commissioners of St. Louis County, Missouri, Respondents, No. 42279—232 S. W. (2d) 904.

Court en Banc, October 2, 1950.

*Taylor Sandison, Arthur U. Simmons, W. H. Leyhe, Jr.,* and *Thomas F. McDonald* for relators.

1102

*J. E. Taylor*, Attorney General, *C. B. Burns, Jr.*, and *Richard H. Voss*, Assistant Attorneys General, for respondent Walter H. Toberman, Secretary of State of Missouri.

*Walter N. Davis, Erwin Tzinberg* and *Wm. J. Becker* for respondents.

1104

 HOLLINGSWORTH, J.—This is an original proceeding in mandamus to compel respondents in their respective official capacities to submit to the qualified voters of the Thirteenth Judicial Circuit of Missouri the question whether the non-partisan court plan shall be adopted in that Judicial Circuit under the provisions of Section 29 (b) of Article V of the Constitution of Missouri.

Each of the respondents waived issuance of the alternative writ and filed separate returns.

Relators are citizens and qualified voters of the Thirteenth Judicial Circuit of Missouri, which comprises the County of St. Louis. Respondent, Walter H. Toberman, is the Secretary of State of the State of Missouri. The other respondents constitute the Board of Election Commissioners of the County of St. Louis.

On the 6th day of September, 1950, relators presented to both respondent Secretary of State and respondent Board of Election Commissioners duplicate sets of petitions signed by themselves and "more than 800" other citizens and qualified voters of said Circuit. These petitions were jointly addressed to both respondents. They made demand on respondents that they submit to the qualified voters of the Thirteenth Judicial Circuit for their approval or rejection at the regular November, 1950, election the question: "Shall the Judges of the Circuit Court in the Thirteenth Judicial Circuit and the Judge of the Probate Court in St. Louis County in said circuit be appointed by the Governor in the manner provided for the appointment of judges to the courts designated in Section 29 (a) of Article V. of the Constitution, by filling any vacancy which shall occur in such offices by appointing one of three persons possessing the qualifications for such office, who shall be nominated and whose names shall be submitted to the Governor by a non-partisan judicial commission established and organized pursuant to the provisions of Section 29 (d) of Article V. of the Constitution of Missouri, and the said judges now holding said offices or hereafter appointed thereto as above provided, submit the question of their retention in office at judicial elections in the manner, and at the times, provided in Section 29 (c) of Article V. of the Constitution. YES NO (Scratch one)".

Respondents, and each of them, refused to accept the petitions so tendered by relators.

Alleging these facts as grounds, relators, on behalf of themselves and the "more than 800" other qualified voters, brought this action, pleading further that a construction of the Constitution of the State of Missouri, and particularly Section 29 (b), Section 29 (g) and Sections 29 (a)-(g) of Article V thereof, was involved in this action; that the petitions were filed pursuant to the provisions of Section 29 (b), and that said section by its terms was self-enforcing and fully effective without need of any legislation.

The return of respondent Secretary of State is a demurrer based upon grounds that the petition does not state facts sufficient to constitute a cause of action, in that Section 29 (b) is not self-enforcing, and that if it is held to be self-enforcing, then the petitions tendered for filing to the Secretary of State and Board of Election Commissioners fail to comply with Section 50, Article III of the Constitution of Missouri, relating to initiative petitions.

The return of respondent Board of Election Commissioners admits all facts alleged by relators and pleads: that a permanent writ of mandamus should be denied relators for the reason that their petition does not state a cause of action; that neither Section 29 (b) nor any existing law provides a manner of submission of the question, nor has the General Assembly provided such a manner as is required by the section itself, nor is there any authority of law or precedent vested in any agency or official to submit the question, and that relators have no right or authority so to do.

This court clearly has jurisdiction to determine the cause.

Section 29 (b) reads: "At any general election the qualified voters of any judicial circuit outside of the City of St. Louis and Jackson County, may by a majority of those voting on the question elect to have the judges of the courts of record therein appointed by the governor in the manner provided for the appointment of judges to the courts designated in Section 29 (a). The general assembly may provide the manner in which the question shall be submitted to the voters."

Quite obviously it vests in the qualified voters of any judicial circuit the right to determine at any general election by a majority of those voting whether the non-partisan plan shall become effective in such circuit, but it does not set up any manner of submission of the question to the people. It authorizes, but limits the authority of, the Legislature to do only that one thing.

Many rules and criteria have been adopted and applied by this court and those of other jurisdictions in determining whether a given constitutional provision is self-enforcing. 16 C. J. S., Constitutional Law, § 48, pp. 98-101; 11 Am. Jur., Constitutional Law, § 74, pp. 691, 692. No useful purpose would be served by a discussion of any of them, except such as are necessary to a decision of this case.

In State ex inf. Barker v. Duncan et al., 265 Mo. 26, 175 S. W. 940, 1. c. 945, this court, quoting with approval from an opinion of the Supreme Court of Colorado, held that: " 'Constitutional provisions are self-executing when it appears that they shall take immediate effect, and ancillary legislation is not necessary to the enjoyment of the right thus given, or the enforcement of the duty thus imposed; in short, if a constitutional provision is complete in itself, it executes itself' "; and further held, quoting from an opinion of the Supreme Court of the United States, Davis v. Burke, 179 U. S. 399, 21 Sup. Ct.

210, that: " 'Where a constitutional provision is complete in itself, it needs no further legislation to put it in force. When it lays down * * * general principles, * * * it may need more specific legislation to make ▮ it operative; in other words, it is self-executing only so far as it is susceptible of execution. But where a Constitution asserts a certain right, or lays down a certain principle of law or procedure, it speaks for the entire people as their supreme law, and is full authority for all that is done in pursuance of its provisions'."

In State ex rel. City of Fulton v. Smith, 355 Mo. 27, 194 S. W. (2d) 302, this court quoted with approval from 11 Am. Jur., Constitutional Law, § 74, pp. 691, 692, as follows: "One of the recognized rules is that a constitutional provision is not self-executing when it merely lays down general principles, but that it is self-executing if it supplies a sufficient rule by means of which the right which it grants may be enjoyed and protected, or the duty which it imposes may be enforced, without the aid of a legislative enactment. * * * Another way of stating this general, governing principle is that a constitutional provision is self-executing if there is nothing to be done by the legislature to put it in operation. In other words, it must be regarded as self-executing if the nature and extent of the right conferred and the liability imposed are fixed by the Constitution itself, so that they can be determined by an examination and construction of its terms, and there is no language indicating that the subject is referred to the legislature for action."

Relators' action is based on the law as declared in the foregoing cases and texts and the following cases cited in the City of Fulton case, supra: State ex rel. Clark County v. Hackmann, 280 Mo. 686, 218 S. W. 318; State ex rel. Miller v. Missouri, K. & T. Rd. Co., 164 Mo. 208, l.c. 213, 64 S. W. 187, l.c. 188. Their contention is that the respondent Secretary of State is vested with authority in all matters relating to election of state officers (judges of the circuit court), and that respondent Board of Election Commissioners is vested with similar power in regard to the election of all county officials (judges of the probate court), and that Section 29(b) places upon them the mandatory duty to do all acts and things necessary to submit the question set forth in said petitions, and that, therefore, a sufficient means exists under our present laws and Section 29(b) for the submission of the question here involved.

Although there is no provision in Section 29(b) for the manner of initiating and holding the election, and the Legislature as yet has not provided any means for so doing, nevertheless, the cases and authorities cited above establish that it may be self-enforcing *if there exists in our election laws sufficient authorization of an efficacious means of so doing*. But these cases do not establish, nor purport to establish, that any authority is vested in any person or agency or governing body of either the State or any judicial circuit to initiate or order the

election here involved. Neither do they establish that any manner or means exists for holding such an election. All that they do hold is that the elections in question in those cases were ordered and held by the proper governing body, to wit, the city council in the city elections, and the county court in the county elections, and that in each instance these respective agencies had lawful authority under existing statutes or constitutional provisions to order such election, and that the constitutional provisions providing for such elections were, therefore, self-enforcing.

Relators, contending that such authority and means do exist, assert that it is not necessary for the Legislature to implement Section 29(b) by special legislation. They further assert that the concluding sentence of that section, reading, ''The general assembly may provide the manner in which the question shall be submitted to the voters.'', in no wise detracts from the right given to the voters in the first sentence of the section. It is their position that the word ''may'' is used in its usual and ordinary sense and is a permissive grant of power to the Legislature rather than a mandatory duty which must be exercised as a condition precedent to any enforcement of the section, citing State ex inf. v. Wymore, 343 Mo. 98, 119 S. W. (2d) 941, 944; Lansdown v. Faris, 66 Fed. (2d) 939; State ex rel. Hanlon v. City of Maplewood, 231 Mo. A. 739, 99 S. W. (2d) 138; and State ex rel. Gazzalo v. Hudson, 13 Mo. A. 61-66. It may be noted, however, that if the right given the General Assembly is a mere permissive right to enact such legislation as would facilitate or provide a more convenient means of its enforcement, then it is an unnecessary provision. It has such a right without specific authorization. State ex rel. Randolph County v. Walden, 357 Mo. 167, 206 S. W. (2d) 979, l.c. 986.

If the contention of relators is sound, then any one or more qualified voters in any judicial circuit of this State may initiate such an election by the mere filing of adequately worded petitions with the Secretary of State and the county courts or board of election commissioners, as the case may be, in each of the counties comprising such circuit; whereupon, the Secretary of State and the county courts (or board of election commissioners) would be compelled to order the election. We have been cited to no authority or precedent for such a procedure, nor have we found any. However, this fact alone would not be sufficient ground for refusing to adopt the procedure above set forth if it could be made workable under existing law. But can it?

At the outset, it is conceivable that due to the fact that the territorial boundaries of the Thirteenth Judicial Circuit and the County of St. Louis coincide such a procedure would be more nearly workable than in judicial circuits of plural counties, but, even with this favorable situation, the voters in judicial circuits comprising one coun-

ty, if relators' contention is correct, could be put to the expense of an election by the mere whim or caprice of one or any indifferent number of voters, and to the expense of any number of recurring elections for other tries at the adoption of the plan, or possibly for its repeal if it should have been adopted. Surely, this would not be desirable.

Consider the possibilities of such a procedure in judicial circuits of plural counties. In these circuits any number of voters in any one of the counties could force an election upon the voters in the other counties. The voters of one or more counties in such circuits thereby could force upon one or more of the other counties in the circuit not only the non-partisan court plan relating to circuit judges, but also the non-partisan court plan relating to the judges of all their courts of record. Incidentally, this would include county magistrates, of which more will be said later. No suggestion is made that Section 29(b) is divisible so that a writ of mandamus could be issued to the respondents requiring them to submit the plan to the voters in the Thirteenth Judicial Circuit, where conceivably it might be made to work in this particular instance, when, for the reasons stated above, the identical procedure could not be made to apply to all of the circuits in the State without engendering the evil possibilities above suggested.

Furthermore, Section 29(b) does not by its terms authorize any voter or group of voters or agency whatever to initiate the election provided for therein. It simply places in the qualified voters of any judicial circuit the right to determine whether the judges of their courts of record shall be appointed under the non-partisan court plan. The qualified voters of a judicial circuit cannot spontaneously or voluntarily hold such an election. It must be initiated, ordered and held by persons or agencies authorized by law so to do. In this instance, we find no authority whatever for any person or persons or agencies to take any of these necessary steps.

Sections 29(c) (1) and 29(c) (2), which provide for the election to retain or reject judges holding office under the non-partisan plan, seem significant here. The manner of ordering, holding and making returns of those elections are set forth in great detail in Section 29(c) (2), yet the election provided for in Section 29(c) (1) is just as mandatory as is the election authorized in Section 29(b). If, as is contended by relators, it was deemed by the framers of the Constitution that the Secretary of State and the county election agencies had full powers to order the election provided for in Section 29(b) and that efficacious means existed for holding the same and making returns thereof, then why did they deem it necessary to fix all these details for the election provided in Sections 29(c) (1) and 29(c) (2)? The identical means already existed for the election ▮▮▮ provided

in Sections 29(c) (1) and 29(c) (2) as the election provided in Section 29(b).

What then is the meaning and intendment of the last sentence of Section 29(b)? If we but assume that the framers of the Constitution did not undertake to determine whether sufficient means and manner were afforded under existing law for submission of this question to the voters of the various judicial circuits, then their language and intent become crystal clear. The last sentence of Section 29(b) then means exactly this: The general assembly may, *if necessary to make the Section effective,* provide the manner in which the question shall be submitted to the voters. Likewise, the meaning and import of Section 29(g) become equally clear. It then means that all of the provisions of Sections 29(a)-(g) shall be self-enforcing except those as to which action of the general assembly *is required.* Hence the language in the last sentence of Section 29(b) that "The general assembly *may provide the manner",* etc., and the language in Section 29(g) that "All of the provisions of sections 29(a)-(g) shall be self-enforcing except those as to which action by the general assembly *may be required".*

If this was the viewpoint from which the framers of the Constitution wrote, and we think it was. then it must follow that the last sentence of Section 29(b), reading, "The general assembly may provide the manner in which the question shall be submitted to the voters.", which it already had authority to do, is more than a mere permissive authorization to the Legislature to provide the manner in which the election shall be held. It is a mandate to it to implement the Section if it is necessary to make it effective, as we have found the case to be.

 It is no answer to this contention that the Legislature has not as yet taken any action to provide a manner in which elections provided for in Section 29(b) may be held in the various judicial circuits of this State and that the qualified voters are thereby denied the exercise of the constitutional right therein granted them. Since the adoption of the Constitution in 1945, the duties of the Legislature have been manifold. We must assume that eventually it will act in accordance with the mandate given it in Section 29(b) and provide a manner by which the question may be submitted to the voters with reasonable and uniform safeguards to prevent the evil possibilities above suggested. It has been held that reasonable provisions in this respect may be enacted so long as they do not unduly restrict the rights conferred by the constitutional provision. State ex rel. Randolph County v. Walden, supra, 1. c. 986.

 Section 29(b) presents other questions, which we do not decide, but we do believe to be good reason why a writ of mandamus should not now be made permanent. This section authorizes the qualified voters of any judicial circuit, outside of the City of St. Louis

and Jackson County, by majority vote of those voting at an election, to have *the judges of the courts of record* therein appointed by the Governor in the manner provided for the appointment of judges to the courts designated in Section 29(a). Section 1990 Mo. R.S.A., as amended, Laws 1945, page 806, provides: "The supreme court of the state of Missouri, the courts of appeals, the circuit courts, the existing courts of common pleas, the magistrate courts and the probate courts in this state shall be courts of record, and shall keep just and faithful records of their proceedings." (It is beside the point, but worthy of note, that magistrate courts are not included in Section 29(a), which applies only to the City of St. Louis and Jackson County.) Now, the question proposed for submission to the voters of the Thirteenth Judicial Circuit is: "Shall the Judges of the Circuit Court in the Thirteenth Judicial Circuit *and the Judge of the Probate Court* in St. Louis County in said circuit be appointed * * *", etc., thereby omitting the judges of the magistrate courts of St. Louis County. There is no provision in Section 29(b) that the voters of a judicial circuit can elect to have *some* of their judges of courts of record appointed under the court plan and *some* of them elected as heretofore.

In this situation, two uncertainties are found: (a) whether the words "judges of courts of record", as used in Section 29(b), are to be construed as meaning the courts of record that were in existence at the time of the adoption of the Constitution in 1945 or as meaning such other courts as the Legislature might thereafter declare to be courts of record, as it did in the instance of magistrate courts, and (b) whether, in such an event, the Legislature may provide authorization for submission of the question of appointment of certain but not all of the judges of the courts of record of any judicial circuit. Both of these questions require further study.

The alternative writ of mandamus should be quashed. It is so ordered. All concur.