In the matter of ADDITIONAL MAGISTRATES FOR ST. LOUIS COUNTY, Missouri.

Hon. Ann Quill NIEDERLANDER et al., Intervenors-Respondents,

v.

ST. LOUIS COUNTY, Missouri, Amicus-Appellant.

No. 61178.

Supreme Court of Missouri, En Banc.

April 25, 1979.

---

290

---

Thomas W. Wehrle, St. Louis County, Counselor, Clayton, for appellant.

Douglas R. Beach, Clayton, for respondent.

Allan F. Stewart, Clayton, Jerry B. Wamser, St. Louis, for intervenors-respondents.

SEILER, Judge.

This is a direct appeal by St. Louis County from an order of the circuit court of St. Louis County increasing by two the number of magistrates in St. Louis County, pursuant to Mo.Const. art. V, § 18 (1945) and § 482.010 RSMo 1969.

On November 17, 1978 a petition was lodged by six members of the executive committee of the St. Louis County Bar As-

sociation requesting the number of magistrate judges in St. Louis County be increased from 11 to 13. The petition, signed by 702 registered county voters, including petitioners, stated that pursuant to Mo. Const. art. V, § 18 (1945) and § 482.010 RSMo 1969, the circuit court had the power to hear their petition, that over 500 qualified voters had signed the petition, that the number of cases in the magistrate court had significantly increased in the past year so that now over 73,000 cases are filed in the 11 magistrate districts in the county each year, that it is anticipated the number of new cases filed at the magistrate level will increase under the new judicial article effective January 2, 1979, that each magistrate has an average load of 6,673 cases per year, over 1,000 more than any other county, that there is a need for magistrates to hear certain cases now heard in circuit court, and that the need for additional magistrates is permanent. Notice was published in accordance with § 482.010(3) and art. V, § 18. A hearing was held on December 20, 1978. St. Louis County filed a motion to be made a party so as to further advise the court, and filed a motion to dismiss on grounds also asserted on appeal and which will be discussed *infra*. Judge Ferriss issued an order stating "[m]otion of St. Louis County, Missouri to be made a party to this proceeding granted. St. Louis County, Missouri made a party to this proceeding as amicus and its motion to dismiss argued and overruled."

Mo.Const. art. V, § 18 (1945) stated:

"There shall be a magistrate court in each county. . . . In counties of 100,000 inhabitants or more there shall be two magistrates, and one additional magistrate for each additional 100,000 inhabitants, or major fraction thereof. According to the needs of justice the foregoing number of magistrates in any county may be increased by not more than two, or such increased number may be decreased, by order of the circuit court on petition, and after hearing on not less than thirty days' public notice. The salaries of magistrates shall be paid from the source or sources prescribed by law."

Section 482.010, RSMo 1969 stated:

"1. Magistrates, as provided for in this chapter, shall be elected at the general election to be held in 1946, and every four years thereafter, and shall hold their offices for four years, or until their successors are elected or appointed, commissioned and qualified.

"2. In counties of . . . one hundred thousand inhabitants or more there shall be two magistrates and one additional magistrate for each additional one hundred thousand inhabitants, or major fraction thereof.

"3. According to the needs of justice, the foregoing number of magistrates in any county may be increased by not more than two, or such increased number may be decreased, by order of the circuit court, on petition of five hundred qualified voters of the county, and after hearing on public notice to be published in some newspaper of general circulation in the county once each week for three consecutive weeks immediately preceding said hearing. No petition for additional magistrate shall be granted unless the circuit court finds from the evidence heard that the administration of justice requires that the number of magistrates be increased, and that the need for additional magistrate or magistrates is not temporary but appears to the circuit court that a permanent need exists. Such additional magistrates shall be appointed by the governor when authorized by proper order of the circuit court certified to him, and such appointee shall hold office until the next general election at which election a successor shall be elected to hold office for the unexpired term or full term as the case may be, said terms to be identical with that of other magistrates."

Only respondents put on evidence at the hearing, although appellant made extensive cross-examination of respondents' witnesses. Robert G. Ruhland, director, department of judicial administration, St. Louis County, presented and discussed statistics

concerning the workload in the magistrate courts of St. Louis County for the year July 1, 1976 through June 30, 1977 as set forth in Office of State Courts Administrator, *Judicial Department of Missouri Annual Statistical Report 1977,* (1977), exhibit No. 1, and as summarized by Mr. Ruhland in exhibit No. 2. These exhibits show that, although St. Louis County had only 8.94% of all magistrates in Missouri, over 66,000 cases, or 19.38% of all magistrate cases, were filed in that county. The average case load per magistrate was thus 6,673 in St. Louis County,[1] although it was only 3,079 on the average statewide. This was 1,000 more cases per magistrate than were filed in Jackson County, the circuit most similar to St. Louis County, and three times the number of cases per magistrate in the city of St. Louis.

Mr. Ruhland further testified that some magistrates were assigned non-contested divorces from the circuit court in an effort to reduce a backlog in the circuit court of both contested and non-contested cases, but that not enough cases were being processed this way and the backlog continues. However, he also testified that two new circuit judges would take office in January 1979 and that should help relieve the logjam. He did not know the amount of time actually spent by the magistrates on the bench, but stated that greater responsibilities repose in the magistrates once they become associate circuit judges. In addition, municipal courts in St. Louis County would be abolished unless the municipalities elected to keep them as of the effective date of the new judicial article. As of the hearing, December 20, 1978, 63 municipalities had determined to keep their courts, while the remaining 29 had not yet so elected.[2]

In addition, Ms. Francis J. Menke, administrative officer of the Fifth District Magistrate Court of St. Louis County, who had much experience as a courts administrator, stated that a definite increase in court and magistrate time had occurred in the past nine years; that more cases were being litigated, with the default rate in civil cases in the fifth district going from 90% to 60%; that the assignment of small claims court cases to the magistrates since 1976 had added an average of 45–50 cases per week to the magistrate courts; that as many civil cases were filed in division five in the first half of 1978 as in all of 1977; that traffic cases had increased 400% between 1976 and 1978; that the magistrate in the fifth district worked weekends; and that no additional caseload could be handled.

Other witnesses, including Magistrates O'Neill and Eberwein, and two practicing lawyers, testified that litigation had increased in recent years, as had the magistrates' duties due to small claims court and uncontested divorce assignments; that the size of dockets had increased, and it took much time to call the docket; that there was now a delay in getting a trial setting in a magistrate court, etc.

Mr. Wehrle, counsel for St. Louis County, brought out that the fifth district handled many more civil cases than other magistrate districts in St. Louis County. Thus, it had 3,444 civil and 2,517 traffic cases, while the 10th district had only 470 civil but almost 8,000 traffic cases. He also elicited testimony that under the new judicial system, associate circuit judges would be assigned cases at random, and that this could alleviate the imbalance of cases filed caused by the then current method of hearing traffic cases in the district in which the violation occurred and of allowing lawyers to pick the court in which they wished to file their civil cases. Additionally, Mr. Wehrle noted that while one magistrate stated he could not handle 1500 civil cases a year, other districts handled double that number. There was also testimony that a large number of traffic cases may take as much time as a smaller number of civil cases, and thus

---

1. Only ten of the eleven divisions reported their caseload as of the time the report was published. 66,734 cases were filed in these ten districts, averaging 6,673 cases per court. Mr. Ruhland thus assigned an average load of 6,673 to the non-reporting district, making total cases 73,407, and average load 6,673.

2. They had until January 1, 1979 to do so.

that the mere number of cases filed is not conclusive of the magistrate time actually spent.

The respondents elicited testimony as to the effect of the larger number of cases assigned to county magistrates as compared to other magistrates in the state. Thus, Ms. Menke and Magistrate O'Neill testified that there is a correlation between the number of cases filed and time spent on the bench, although Ms. Menke also stated that due to the fact that the same case can take longer or shorter depending on the magistrate and lawyers involved, the number of cases does not necessarily reflect the amount of magistrate time spent. A practicing attorney gave testimony as to the rise in litigated cases and attendant delays. Magistrate Eberwein noted that the number of jury trials had increased, and that he spent about ten hours per day on court work, with about 35 hours per week devoted to time on the bench. All witnesses testified that they believed more magistrates were needed, although Magistrate O'Neill stated that he did not personally feel overworked despite spending about 30 hours per month on small claims cases since 1976 in addition to his other work. Magistrate O'Neill also stated that he did not think the quality of justice had declined due to the increase in work.

On December 21, 1978, Judge Ferriss ruled that the administration of justice required the appointment of two additional magistrates, and he thus ordered the number of magistrates in St. Louis County to be increased from 11 to 13. St. Louis County filed a notice of appeal on December 28, 1978. The two magistrates appointed by the governor pursuant to the circuit court's order filed a motion to intervene as parties-respondent, which was granted on January 26, 1978.

## I.

Respondents[3] filed motions to dismiss the appeal, arguing that this court has no jurisdiction to hear this appeal because (1) nei-

ther construction of the constitution nor title to state office are involved; (2) appellant is amicus curiae only and thus has no standing to appeal; and (3) the order of the circuit court was not an appealable order. We shall address these contentions in turn before proceeding with the substantive questions raised.

First, we find that this appeal involves construction of Mo.Const. art. V, § 18 (1945), and as such is properly lodged in this court. The issues raised herein are not moot simply because art. V, § 18 is no longer in force. Intervenors were appointed pursuant to that article and § 482.010(3), RSMo 1969, and are presently serving as associate circuit judges. If we find that their appointment was proper, they will continue to serve; if we find to the contrary, they will not. As such, the construction we give to art. V, § 18 will have a real and continued effect on the status of the intervenors. The issues are not moot. *See, e. g., Adamick v. Ferguson-Florissant School Dist.,* 483 S.W.2d 629, 631, (Mo.App. 1972); *Ruggeri v. St. Louis,* 429 S.W.2d 765 (Mo.1968). *Compare State ex rel. Thompson v. Simmons,* 499 S.W.2d 819 (Mo.App. 1973). Nor, contrary to respondents' contention, was construction of the provisions of art. V, § 18 at issue in this case reached in *State ex rel. Randolph County v. Walden,* 357 Mo. 167, 206 S.W.2d 979 (banc 1947).

Secondly, we disagree that appellant has no standing to appeal. The circuit court's order making appellant "a party as amicus" has been set out above. Normally, an amicus has no right to appeal because it acts only as a friend of the court and not as a party. *See Kansas City v. Kindle,* 446 S.W.2d 807 (Mo.1969); *State ex rel. Jackson County Library Dist. v. Taylor,* 396 S.W.2d 623, 626 (Mo.banc 1965). However, respondents' own cases state that an amicus is allowed no control over the litigation but must accept the case as he finds it, *Robert Williams & Co., Inc. v. State Tax Comm'n*

---

**3.** For the sake of brevity, we shall refer to both petitioners and intervenors-respondents as "respondents", since they have filed a joint brief.

*of Missouri,* 498 S.W.2d 527 (Mo.1973); *State ex rel. Jackson County Library Dist. v. Taylor,* 396 S.W.2d at 626; *Gem Stores, Inc. v. O'Brien,* 374 S.W.2d 109, 118 (Mo. Banc 1963). Nonetheless, in this case appellant was permitted to make a motion to dismiss, which was denied, and permitted to cross-examine witnesses. It was afforded the opportunity, although it did not take it, to present evidence in opposition to the appointment of the two additional magistrates, and was permitted to make oral argument. Normally these functions are reserved to parties, and not permitted to an amicus. 3A C.J.S. Amicus Curiae §§ 7, 9d (1973). Usually an amicus acts either as a defender of the court's dignity and honor where such is impugned, or as an assistant to the court to aid it in resolving a controversy, *In re Phi Fathers Educational Ass'n,* 239 Mo.App. 1105, 203 S.W.2d 885, 887 (1947). Amicus may also act in the interests of a private client with an interest in the litigation, in which case he is more akin to an intervenor, except that he is not made a party and thus is not bound by the court's judgment, *id.* at 887, 889.

However, in this case the appellant was made a party. As such, we conclude that the addition of the words "as amicus" to the order granting intervention cannot defeat appellant's right to appeal where it was in fact also made a party and treated as a party.[4] *See Kansas City v. Kindle,* 446 S.W.2d at 818. In that case, involving condemnation, appellant was originally attorney for a number of the defendant-condemnees, but was given leave to withdraw

as their attorney but to appear informally to advise them since they had no other attorney. In order to make the presentation of evidence more orderly, at the court's request the attorney assisted in its presentation, made objections on behalf of defendants, and so forth. In the course of trial he noted that he was performing his duties for his client. In his motion for a directed verdict he stated that he was an amicus, and filed a motion for fees, granted by the court. This court reversed, stating:

> "An amicus curiae is not appointed as the private counsel of parties to an action to represent them in a partisan manner and for their personal use and benefit. . . 'An amicus curiae is not a party and cannot assume the functions of a party, an attorney for a party, or even a partisan.' 4 Am.Jur.2d Amicus Curiae, § 3, p. 111

> .  .  .  .  .

> . . . [Here the attorney was] appearing, however, not as an advisor to the court but as a representative of private litigants who had a direct financial interest in the outcome of the case . . . with the objective in view of winning the case for them." *Id.* at 818–19.

As such, he was not entitled to compensation as an amicus, regardless of the fact that the circuit court denominated him as such in granting the motion for fees.[5]

We think that the reasoning in *Kindle* applies to this case, in which appellant was treated as a party, and in fact made a

---

4. Respondents argue that appellant waived appeal by not objecting to its amicus status. This point has no merit in light of our determination that appellant was in fact a party and not merely an amicus. We note, however, that the county, through Mr. Wehrle, questioned whether the county's status as amicus rather than an opposing party might affect review by a higher court. The circuit court stated that the term amicus had a fine, long tradition, meant friend of the court, and did not bother him. Mr. Wehrle said that it was fine as long as it meant what the judge said. While the exchange is ambiguous, it is clear that Mr. Wehrle took the judge's statements as indicating that he could appeal, and thus did not press the point any

further. As a result, we cannot say that the county waived any objection to being considered only an amicus.

5. *Cf. In re Moore's Estate,* 354 Mo. 240, 189 S.W.2d 229, 233 (1945) (there may be cases in which in the interests of justice one not a party, but aggrieved by the judgment, may appeal, although not in this case); *Farmers Ins. Exch. v. Nagle,* 190 N.W.2d 758 (N.D.1971) (under statute requiring attorney general to represent state in all cases in which it is interested as a party, court treated state as a party despite motion to intervene only as amicus, where financial interest of state involved).

party, irrespective of the fact that the court also denominated appellant as amicus.[6]

The only remaining question as to the county's right to appeal is whether the determination of the circuit court was an appealable order. Respondents contend not, arguing that the procedure authorized by Mo.Const. art. V, § 18 and § 482.010(3) was a special constitutional proceeding more akin to a public hearing than to a trial and that the rules of civil procedure, including § 512.020, RSMo 1969 governing appeals, do not apply. As a result, since no right to appeal is given in the constitutional or statutory provisions involved, there is no right to appeal.

We cannot agree. Although art. V, § 18 did set up a unique constitutional authority in the circuit court, nothing in it, or in § 482.010, expressly prohibited the right to appeal otherwise allowed in civil cases to a party aggrieved by a final judgment of the court.

Section 512.020 states in relevant part: "Any party to a suit aggrieved by *any* judgment of any trial court in any civil cause from which an appeal is *not prohibited* by the constitution, *nor clearly limited* in special statutory proceedings, may take his appeal to a court having appellate jurisdiction . . . from any final judgment in the case . . . " (emphasis added).

Thus, appeal pursuant to § 512.020 must be proper unless the special constitutional nature of the circuit court proceeding makes it inapplicable, as is contended by respondents. However, we are cited no precedent for holding that the constitutional nature of the circuit court's authority removes it from the confines of § 512.020. Respondents simply argue that prohibition, as used in *State ex rel. Randolph County,* 206 S.W.2d at 979, or a petition for review, as discussed in *State ex rel. Weinstein v. St. Louis County,* 451 S.W.2d 99 (Mo.banc 1970)

would be the proper remedies. However, the fact that prohibition was found proper in *Randolph County,* which construed portions of Mo.Const. art. V, § 18 (1945), does not mean that direct appeal is not also permissible. Use of a petition for review in *Weinstein,* in order to review, under the court's supervisory power, the juvenile court's inherent power to hire necessary personnel where such are not provided by conventional channels, cannot affect the county's right to appeal the judgment in this case. Where, as here, the court acts not pursuant to its inherent power to carry out its functions, but rather pursuant to express constitutional and statutory authority, a petition for review is not appropriate. *Gaines v. Grimm,* 555 S.W.2d 11 (Mo.banc 1977).

In sum, we find nothing in the cases or the constitutional or statutory provisions cited to make § 512.020 inapplicable. Although the proceeding is somewhat akin to a hearing in that public notice takes the place of service of process, and a petition takes the place of pleadings, in this case as in others the court must make a judicial determination of the need for additional judges, see *State ex rel. Randolph County,* 206 S.W.2d at 986. To hold that it does otherwise would be inconsistent with the role traditionally played by judges in our system and would blur the division of powers so integral to our constitutional framework, see *State ex rel. Weinstein,* 451 S.W.2d at 101–02.

The fact that Mo.Const. art. V, § 18 is self-enforcing adds nothing to respondents' argument for, as we noted in *State ex rel. Randolph County,* 206 S.W.2d at 986, the legislature had a right to enact legislation to "provide a convenient remedy for the protection of the right secured or the determination thereof, or place reasonable safeguards around the exercise of the right." The review provided by § 512.020 is

---

6. The court could properly permit intervention as a party since St. Louis County alleged that under § 476.270, RSMo 1969 and § 476.020, V.A.M.S.Supp.1979, all expenditures of the magistrate and associate circuit courts except

salaries and clerk hire are payable from the county treasury. Additionally, until St. Louis County entered this case there was no one representing its interests in the controversy. See rule 52.12(a).

both a convenient remedy for the determination of the right to appoint new judges and a reasonable safeguard around the exercise of that right.

Respondents further contend, however, that there is no case or controversy involved herein, as required by § 512.020. Since that section does not refer to "case or controversy", we presume that respondents mean that the county is not a "party aggrieved."

■ The county alleged a direct pecuniary interest in the outcome of the litigation in that it was required to pay all expenses of the magistrate and associate circuit courts except salaries and clerk hire, *see supra,* note 6. We have already determined that the county is a party. Thus, it is a "party aggrieved" within the meaning of the statute and has a right to appeal. *See, e. g., Bank of Belton v. State Banking Board,* 554 S.W.2d 451, 453 (Mo.App.1977); *Hertz Corp. v. State Tax Comm'n,* 528 S.W.2d 952, 954 (Mo.banc 1975); *Estate of Soengen,* 412 S.W.2d 533 (Mo.App.1967).

## II.

■ Appellant's first substantive point is that the evidence failed to demonstrate the need for the appointment of two additional magistrates in St. Louis County, as required by § 482.010(3). We note that neither party discussed the proper standard for review in their briefs. However, during oral argument both conceded that a substantial evidence test should apply. We agree. Since we have determined, *supra,* that this case can be appealed under § 512.020, RSMo 1969, as are other court tried cases, we shall apply the standard of review set out in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976). That is, "the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law."

The evidence was discussed in detail in the statement of the facts and will not be repeated here. Appellant contends that statistics are meaningless in themselves, absent a showing that the existing magistrates could not handle the case load, and asks us to infer that since only two of eleven county magistrates testified as to the need for additional magistrates, the others must not feel there is a permanent need for such magistrates.[7] Rather, the county claims, the evidence showed that the judicial system was in a state of flux due to the imminent implementation of the new judicial article, and any testimony as to permanent need had to be merely speculative because it was unknown how many municipalities would send their cases to the new associate circuit judges; what the effect of two new circuit judges would be on the backlog of divorce cases; or what relief the appointment of two new magistrates would bring that a redistribution of case load among the districts would not. It further argues that the mere increase in numbers of cases filed and litigated indicates no problem peculiar to the magistrate courts since more cases are now filed and litigated at all levels of the court system. Thus, the county concludes, while particular districts may be overworked, there is no showing of a permanent need for additional magistrates, as required by § 482.010.

■ We agree that some of the testimony given was speculative. However, it is also true that in order to show *permanent* need the witnesses must necessarily have spoken of their expectations as to future caseloads in the courts. Appellants cannot fault respondents for failure to show future need and at the same time ask us to disregard all testimony as to future need because it has not yet occurred and so is speculative. If we find substantial competent evidence that a permanent need for additional judges exists, we must affirm.

7. However, as we noted in oral argument, if these magistrates were against the addition they could as easily have been expected to testify at the request of the county as at the request of the executive committee.

Judge Ferriss indicated his agreement with appellant that more than mere statistics must be shown in order to establish that the administration of justice requires additional magistrates, and thus cannot be said to have relied on mere numbers unless no other evidence was given. The summary of the evidence related earlier shows that additional evidence *was* adduced as to the amount of time particular magistrates spent in court; the large increase in filings and in litigation of cases since 1971 (the last time additional magistrates were appointed); the delay in trial settings; and the inexact correlation between the number of cases filed and magistrate time spent. There was, of course, also contrary evidence, and evidence which was speculative both as to the benefits to be derived from additional magistrates and the increase in workload expected under the new judicial article, and as to any alleviation of workload due to the appointment of two new circuit judges and the expected evening of distribution of cases assigned once the new code took effect. However, we cannot say that there was no substantial evidence on which Judge Ferriss could base his determination that a need for two new magistrates existed.

### III.

Appellant's second substantive contention is that the circuit court could not have found, on December 21, 1978, that a permanent need for two additional magistrates existed, as required by § 482.010, because the office of magistrate was abolished on January 2, 1979, eleven days thereafter. Under the new judicial article, effective on that date, the magistrates became associate circuit judges with new duties; a permanent need for magistrates thus could not exist.  ·

We do not find this argument persuasive. As stated by respondents, the "permanent need" addressed by § 482.010 is the need for additional judges at a particular level of the court system in order better to effectuate the administration of justice. It would be hyper-technical, and would defeat the purpose of the legislature, to conclude that the

change in title and certain functions of those judges who were formerly called "magistrates" and are now called "associate circuit judges" could prevent the appointment of two additional magistrates if substantial evidence showed that the need for additional judges performing such functions was permanent. Rather, as appellant itself notes, we think the legislature required that the need appear permanent in order to insure that a temporary rise in workload due to an unusual number of filings over a limited period could not form the basis for an increase in the number of magistrates.

Moreover, we take note of § 478.320, V.A. M.S.Supp.1979, which states in part:

> "[i]n addition to the associate circuit judges authorized by subsection 1 of this section, one additional associate circuit judge is authorized for each magistrate which was provided in the county pursuant to the provisions of subsection 3 of section 482.010 RSMo, in effect January 1, 1979. Additional associate circuit judges may be authorized in particular counties by law hereafter enacted."

This section clearly states that magistrates appointed pursuant to the provisions of § 482.010(3) should become associate circuit judges on January 2, 1979, and reaffirms that § 482.010 was effective through January 1, 1979. This strongly implies that, through January 1, 1979, magistrates who were properly appointed pursuant to § 482.-010(3) would become associate circuit judges, and thus that magistrates could be appointed until that date.

To adopt appellant's argument that "permanent need" could not be shown on December 21, 1978, nor presumably for some prior period of time, because the office of magistrate would cease to exist 11 days thereafter, could call into question the authority for the appointment of every magistrate appointed under § 482.010(3) since August 3, 1976, the date the people adopted the new judicial article. Since that time it has been apparent that magistrates would become associate circuit judges on January 2, 1979. In light of the above, it is clear that by "permanent need" the legislature meant the permanent need of the adminis-

tration of justice for judges fulfilling the role fulfilled by magistrates at the time § 482.010(3) was adopted.[8] Appellant's argument is thus without merit.

### V.

Appellant's final point is that under Mo. Const. art. V., § 27(4)(c), V.A.M.S.Supp.1979 all magistrates must be elected in 1978 in order to be appointed associate circuit judges in 1979 and since the hearing did not take place until December 21, 1978, after the November 7, 1978 election, no new magistrates appointed could become associate circuit judges.

The principal relevant provisions of the new constitutional article are:

Art. V., § 27:
"Except as otherwise provided in this article, the effective date of this article shall be January 2, 1979."

Art. V., § 27(1):
"All judges elected in 1978 shall be sworn into office on January 1, 1979."

Art. V., § 27(2):
"All magistrate courts, probate courts . . . shall continue to exist until the effective date of this article *at which time* said courts shall cease to exist." (emphasis added)

Art. V., § 27(4)(c):
"In 1978, all magistrates shall be *elected as provided by law.* On the effective date of this article all magistrates who are *then in office* shall become associate circuit judges and shall serve out the remainder of their terms as such. . . ." (emphasis added).

Art. V., § 27(20):
"All laws and rules inconsistent with the provisions of this article shall, *on the effective date hereof*, be and are repealed. Except to the extent inconsistent with the provisions of this article, all provisions of law and rules of court in force on the effective date of this amendment shall continue in effect until superceded

in a manner authorized by the constitution or by law." (emphasis added).

Relevant statutory provisions are:

§ 478.320(2) V.A.M.S.Supp.1979:
"In addition to the associate circuit judges authorized by subsection 1 of this section, one additional associate circuit judge is authorized for *each* magistrate which was provided in the county pursuant to the provisions of subsection 3 of section 482.010, RSMo, *in effect on January 1, 1979."* (emphasis added).

§ 482.020(2), RSMo 1969:
"When a vacancy occurs in the office of the magistrate, the governor may supply the same by the appointment of some person competent and qualified, who shall hold his office until the next general election . . . ."

Also relevant are Mo.Const. art. V, § 18 (1945), § 478.320(2) V.A.M.S.Supp.1979, and § 482.010(3), RSMo 1969, set forth elsewhere in this opinion.

Appellant's argument is that subsection 27(4)(c) of the new judicial article retroactively overrode § 482.010, RSMo 1969 by providing in its first sentence that *all* magistrates shall be elected in 1978. Further, the use of the phrase "then in office" in the second sentence of that subsection cannot be read apart from the first sentence, and must refer only to those elected and in office at the effective date of the new article. Since a previously enacted law which conflicts with a new constitutional provision is void, *Pogue v. Swink*, 364 Mo. 306, 261 S.W.2d 40 (1953), and since seemingly conflicting constitutional provisions must be harmonized, *State ex rel. Jones v. Atterbury*, 300 S.W.2d 806 (Mo.banc 1957), we must hold, it is urged, that § 482.010(3) became void after November 7, 1978 since no magistrate appointed after that date could be elected in 1978. Further, § 18 of the old art. V must be harmonized by considering it ineffective after November 7, 1978. This reading of the statutes and constitutional provisions is necessary, we are

---

8. In light of our resolution of this issue, we need not address respondents' counterargument that the requirement that a showing of "permanent need" be made is invalid because it

limits the right under Mo.Const. art. V, § 18 (1945) to appoint magistrates according to the needs of justice, there being no mention of "permanent" in the constitutional provisions.

told, in order to effectuate the intent of the legislature to insure that all magistrates be elected immediately before becoming associate circuit judges since after that date St. Louis County associate circuit judges would have greater responsibilities yet would never again take part in a contested election, but could only be retained or not retained in office.

Appellant has misinterpreted the constitutional provisions at issue. Its interpretation would require us to imply repeal of § 482.010 and art. V, § 18; to create a period of time, or "gap", during which no magistrates could be appointed regardless of the need therefore; and would create uncertainties as to the status of magistrates appointed to fill vacancies left because of the death or retirement of magistrates between November 7, 1978 and January 2, 1979 [9] as well as magistrates who might have been appointed at a time prior to November 7, yet too close to that date to be placed on the ballot. However, article V evidences an intent that continuity, rather than inconsistency, should govern the transition to the new judicial article by providing that all laws, rights and duties previously held or in force and not inconsistent with the new constitutional provisions or subsequent laws or rules should continue in full force and effect. *See, e. g.,* Mo.Const. art. V, §§ 27(7), 27(18), 27(20), 27(2). In addition, repeal by implication is not favored in the law, *State ex rel. Aquamsi Land Co. v. Hostetter,* 336 Mo. 391, 79 S.W.2d 463 (Mo. 1934), and we will give effect to express provisions in preference to implications, *Rathjen v. Reorganized School Dist. R–11 of Shelby County,* 365 Mo. 518, 284 S.W.2d 516, 522 (banc 1955).

We think that the new article, including § 27(4)(c), can be read in harmony with art. V, § 18 and § 482.010. The first sentence of § 27(4)(c) provides that all magistrates shall be elected in 1978 as provided by law, and § 27(1) states that all magistrates elected in 1978 shall be sworn into office on January 1, 1979. Therefore, as of January 1, 1979, of those who stood for election in 1978, only those actually elected were sworn into office on January 1, 1979. If the constitution further intended that only these magistrates could become associate circuit judges, it could have provided in the second sentence of § 27(4)(c) that only those "so elected" could become associate circuit judges. However, it instead provided that all those "then in office" on the effective date of the article (January 2, 1979), a more inclusive term, became associate circuit judges. The reason for the change in language is clear.

Even assuming that the constitution wished to insure that the people elect as magistrates in 1978 only those who they felt qualified to become associate circuit judges in 1979, it was also vital to insure that the number of judges not be made fewer on the effective date of the new article simply because some judges might be appointed rather than elected as a result of retirements, or appointments pursuant to art. V, § 18. Thus it provided that the newly elected magistrates be sworn into office on January 1, 1979, before the effective date of the article, so that by stating that all "then in office" on January 2, 1979 would become associate circuit judges, not only appointed but also elected magistrates would be included.

This interpretation is further supported by Mo.Const. art. V, § 20 of the new article, which states that all laws inconsistent with the new article were repealed *on its effective date.* This belies appellant's contention that either art. V, § 18 of the old constitutional article, § 482.010, or § 482.020(2), RSMo 1969 (under which the governor may fill vacancies), were impliedly repealed after the last general election in 1978.

**9.** Appellant agrees that the governor may appoint persons to fill these vacancies, and that the appointees may become associate circuit judges on January 2, 1979, despite the fact that they were not elected to that office. It distinguishes these judges from those appointed under § 482.010(3) by arguing that, as to the former type of vacancy, at least someone had been elected to the office vacated, even if a different person was later appointed and actually became the associate circuit judge. We fail to see how an "office" can be elected, and thus how a judge appointed by the governor to fill a vacancy caused by retirement, death, etc., can be considered "elected" if a judge appointed to fill a "vacancy" caused by the creation of two new judgeships pursuant to § 482.010(3) cannot.

The legislature must have also so interpreted the new constitution, for it stated in § 478.320(2), V.A.M.S.Supp.1979, that § 482.010(3) was in effect on January 1, 1979 and that an associate circuit judge was authorized for *each* magistrate appointed pursuant to its provisions.

We thus conclude that, while appellant was a party to the cause below and can properly appeal to this court, its substantive contentions have no merit. The determination of the circuit court was supported by substantial evidence of a permanent need for two additional magistrates, and nothing in the new judicial article requires that the new magistrates could not become associate circuit judges on January 2, 1979. Rather, it provides that they shall become associate circuit judges on that date.

The judgment of the circuit court is affirmed.

MORGAN, C. J., and BARDGETT, DONNELLY, SIMEONE and WELLIVER, JJ., concur.

RENDLEN, J., dissents.