Dear Dr. Antonio:
You have requested an opinion from this office as to whether the state's opening balance on July 1, 1980, is properly to be included within the definition of "total state revenues" for purposes of computation of the state's revenue limit for FY 1982.
For FY 1982 and each succeeding year there is established a revenue limit under Art. X, §§ 16-24, Mo. Constitution. The pertinent portions of §§ 17 and 18 read as follows:
 Section 17. As used in sections 16 through 24 of Article X:
 (1) `Total state revenues' includes all general and special revenues, license and fees, excluding federal funds, as defined in the budget message of the governor for fiscal year 1980-1981. . . . (Emphasis added)
 Section 18. (a). . . . Effective with fiscal year 1981-1982, . . . the general assembly shall not impose taxes of any kind which, together with all other revenues of the state, . . . exceed the revenue limit established in this section. . . . (Emphasis added)
The remaining portion of § 18(a) is probably more easily expressed in the form of the following mathematical formula:
The greater of:
(Personal income (of Missouri (in the calendar (year prior to the (calendar year (in which appropriations (made Total state revenues (for FY 19XX Revenue limit in FY 1980-1981 = _____________________ X OR for FY 19XX Personal income of Missouri in 1979
 (Average of personal (income of (Missouri for three (calendar years preceding (FY 19XX
The significance of the inclusion or exclusion of any item from total state revenues (TSR) in FY 1981 is that, irrespective of which future fiscal year is the subject of a revenue limit computation, the ratio of TSR FY 1981 to personal income of Missouri (PIM) in 1979 is immutable. The application of that ratio to a future year's PIM therefore insures that no greater portion of a future year's personal income will be used to fund state government than was the case at the time of passage of the Hancock Amendment.
We believe that the plain language of Art. X, § 17 is the primary reference in determining which items are to be included in TSR for FY 1981. Again, that section requires the inclusion of"all general and special revenues, license and fees, excluding federal funds as defined in the budget message of the Governor for FY 1981."[1] In connection with the submission of the Governor's proposed FY 1981 budget, the Executive Office did prepare a "Budget Message and Budget Summary" in January 1980. While no conventionaldefinition of "general and special revenues" appears in that document, we do find a graphic representation of the revenue sources used to fund the budget. (A copy of that portion of the Governor's budget message is appended hereto.) Very clearly "Unspent 1979 General Revenue," or what is herein referred to as the July 1, 1980, opening balance, constitutes a substantial portion of the revenues anticipated to be available for appropriation for the 1981 budget. Given the necessity of ascribing some meaning to each portion of § 17, we are led to the inevitable conclusion that by the adoption of this amendment to Article X, "general and special revenues" has been specifically defined to include the opening balance in question.
We believe that the significance of the practical effect of your inquiry, however, demands that the inclusion of the opening balance be considered without reference to the budget message discussed above. In that regard, while we know of no cases construing the term "total state revenues," an examination of prior Missouri decisions construing revenue-related matters is quite helpful.
In State ex rel. Thompson v. Board of Regents for NortheastMissouri State Teachers' College, 264 S.W. 698 (Mo. Banc 1924), the Missouri Supreme Court was asked to construe a provision of our 1875 Constitution which required all revenue collected by the state to be paid into the state treasury. Said the court:
 By revenue, whether its meaning be measured by the general or the legal lexicographer, is meant the current income of the state from whatsoever source derived which is subject to appropriation for public uses. . . . if required to be paid into the treasury, it becomes revenue or state money; . . . . (Id. at 700)
The above language was quoted with approval by the court inState ex rel. McKinley Pub. Co. v. Hackmann, 282 S.W. 1007 (Mo. Banc 1926) in determining that the funds used to maintain the Highway Commission constituted state revenue. See also New FranklinSchool Dist. No. 28, Howard County v. Bates, 225 S.W.2d 769, 775
(Mo. 1950) and State ex rel. Gass v. Gordon, 266 Mo. 394,181 S.W. 1016, 1019 (Banc 1915).
The case of State ex rel. Spink v. Kemp, 283 S.W.2d 502 (Mo. Banc 1955) is more closely analogous to the case at hand, insofar as the court was required to define the extent of Kansas City's "general revenue fund." Under § 84.730, RSMo 1949, as much as one-sixth of the city's general revenue fund was to be appropriated for support of the local police force. Among the questions presented was whether the unappropriated revenue from fiscal year 1954 was to be included within 1955 general revenue for purposes of the computation. The court first adopted the definition of "revenue" set forth in State ex rel. Thompson v. Board of Regentsfor Northeast Missouri State Teachers' College, supra, with some slight expansion:
 [Revenue means] the current income of the state from whatsoever source derived which is subject to appropriation for public uses. This current income may be derived from various sources, . . . but, . . . if required to be paid into the treasury, it becomes revenue . . . [citing State ex rel. Thompson v. Board of Regents for Northeast Missouri State Teachers' College, supra, and State ex rel. McKinley Pub. Co. v. Hackmann, supra] It would seem clear . . . that the term `general revenue' would mean all current income . . . however derived, which is subject to appropriation for general public uses, . . . (Emphasis added)
If general revenue equals current income, does it then include fund balances carried over from prior years? The court in that regard first affirmed the conclusion of its appointed commissioner:
 Item 84, designated as `Prior Years' Revenue', . . . represents the revenue to be received during the fiscal year 1954-1955 from activities of prior years and includes (1) revenue which was appropriated in prior years and which was not expended, and (2) revenues which were received in prior years in excess of the revenues expected to be received. This revenue is subject to appropriation
for use in the various funds . . . (Emphasis added) (State ex rel. Spink v. Kemp, supra at 517)
Had the court gone no further than to expressly approve this conclusion by its commissioner, we would be extremely reluctant to conclude that the FY 1981 opening balance was to be classified as anything other than revenue received in FY 1981, and therefore within "total state revenues" in FY 1981 according to § 18(a). The court, however, later removed all doubt as to the treatment to be afforded the unappropriated balance, and its status as current revenue:
 At the beginning of the fiscal year, the council does not appropriate all of its unappropriated surplus, because the city has a better credit rating if it has financial reserves. But it is generally thereafter appropriated in regular course. . . .
 We think it clear that the actual amount of such funds available . . . during the fiscal year . . . should be considered current revenue . . . `Current revenue', as stated, means income from any source that is or will be at hand and currently available for public use. [citations omitted] As unappropriated surpluses came into the treasury or became freed of any charge, trust or pledge to special use during the fiscal year, they became available for appropriation and were appropriated . . . (Emphasis added) (State ex rel. Spink v. Kemp, supra at 519)
We are persuaded, therefore, that, according to prior case law, the July 1, 1980, opening balance constitutes not only "general revenue," but "current revenue" and should as well be included within "total state revenues in fiscal year 1980-1981" for purposes of the computation required by Art. X, § 18(a).
It has been suggested, on the other hand, that Art. X, § 20 requires that the opening balance be excluded from total state revenues and the revenue limit. Section 20 provides as follows:
 No expenses of state government shall be incurred in any fiscal year which exceed the sum of the revenue limit established in sections 18 and 19 of this article plus federal funds and any surplus from a previous fiscal year. (Emphasis added).
By equating "surplus" with "opening balance," it is argued that the opening balance must be outside the revenue limit, since it otherwise would be unnecessary to mention it. We do not agree. We note first that "surplus" does not denote any readily identifiable entry in the financial records of the state of Missouri. Our research discloses no use of the term "surplus" in any other portion of the Constitution. Further, it is apparent that the construction required (whereby "surplus" equals "opening balance") would result in confusion and inconsistency within the amendment, to the extent that § 18(a) is determined to tie the revenue limit to taxes "and all other revenues of the state" — including, according to case law, the balance from prior years' operations — and § 20 is held to exclude the same amount.
Any construction of a constitutional provision which renders some portion meaningless should be avoided. State ex rel. Moore
v. Toberman, 250 S.W.2d 701 (Mo. Banc 1952). We are required to give effect to seemingly conflicting provisions so as to bring all parts of the Constitution into harmony. State ex rel. Jones v.Atterbury, 300 S.W.2d 806 (Mo. Banc 1957); Brown v. Morris,290 S.W.2d 160 (Mo. Banc 1956); Matter of Additional Magistrates forSt. Louis County, 580 S.W.2d 288 (Mo. Banc 1979). We are inclined to believe that the reference to surplus in § 20 is not equatable with opening balance, but instead relates to the "excess revenues" which the state is authorized to retain if the revenue exceeds the limit by less than one percent, according to § 18(b). That section prescribes a transfer of the "excess" to the general revenue fund such that it would likely appear as a portion of the ending and opening general revenue balances, and otherwise includable in the revenue limit as set forth above. It appears that the fair intendment of § 20, however, is to permit the revenue limit to be calculatedwithout reference to the portion of any opening balance which constitutes the de minimus revenue limit excess from a prior fiscal year.
CONCLUSION
It is the opinion of this office that the state's July 1, 1980, opening balance is properly to be included within the definition of "total state revenues" for purposes of computation of the FY 1982 revenue limit under the Hancock amendment.
Yours very truly,
 JOHN ASHCROFT Attorney General
[1] See § 17. We assume that the clause "as defined in the budget message of the Governor for FY 1981" modifies "all general and special revenues, license and fees" and not "federal funds."